2009-14298
FILED
January 02, 2012
CLERK, U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
0003916824

16

1  HAGOP T. BEDOYAN, CSB NO. 131285
   CHRISTIAN D. JINKERSON, CSB NO. 232143
2  KLEIN, DENATALE, GOLDNER,
      COOPER, ROSENLIEB & KIMBALL, LLP
3  5260 N. Palm Avenue, Suite 201
   Fresno, California 93704
4  Telephone: (559) 438-4374
   Facsimile:  (559) 432-1847
5  E-Mail: hbedoyan@kleinlaw.com; ijinkerson@kleinlaw.com

6  Attorneys for the Official Committee of Unsecured Creditors

## UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF CALIFORNIA - FRESNO DIVISION

| | |
|---|---|
| In re: | Case No. 09-14298-B-11 |
| CAPITAL CORP OF THE WEST, | Chapter 11 |
| Post-Confirmation Debtor. | DC No. KDG-64 |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW ON OBJECTION TO PROOF OF CLAIM

Before the court is the objection (the "Objection") of the Official Committee of Unsecured Creditors (the "Creditors' Committee") of Capital Corp of the West (the "Debtor") to Proof of Claim Number 105 in the amount of $145,000 (the "Claim") filed by Michael Van Duyn (the "Claimant"). The Creditors' Committee seeks the disallowance of the Claim pursuant to 11 U.S.C. § 502(b). The court has considered the pleadings and evidence filed in support of the Objection, the opposition filed by the Claimant (the "Opposition"), and the information presented on the record at the hearing. For the reasons set forth below, the Objection will be sustained without prejudice to the Claimant pursuing claims for misrepresentation against non-debtors.

RECEIVED
November 22, 2011
CLERK, U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
0003916824

These findings of facts and conclusions of law are made as required by Federal Rule of Civil Procedure 52(a), made applicable to this contested matter by Federal Rule of Bankruptcy Procedure 7052.  The court has jurisdiction over this matter pursuant to 28 U.S.C. § 157 and § 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409, and 11 U.S.C. § 502(b).  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and is part the claims allowance process.

**~~Background and~~ Findings of Fact.**

The Debtor was a bank holding company incorporated under the laws of the State of California.  The Debtor's primary asset and source of income were its subsidiary, County Bank.  County Bank was an insured depository institution formed in 1977.  County Bank was a state-chartered bank that was a member of the Federal Reserve System, and its deposits were insured by the Federal Deposit Insurance Corporation ("FDIC").

~~In late 2007, the Debtor began to experience a decline in its financial condition.  The Debtor reported that its capital levels had deteriorated due to losses from defaulted loans in its 2007 Annual Report which was filed with the Securities & Exchange Commission on March 31, 2008.~~

On May 8, 2008, the Federal Reserve Bank of San Francisco (the "Federal Reserve") notified Debtor's Board of Directors (the "Board") that Capital Corp of the West and County Bank were in a "troubled condition" based on its capital levels.  The Federal Reserve also advised the Board of the requirement to comply with the golden parachute restrictions.

On July 17, 2008, the Federal Reserve, County Bank, and the Debtor entered into a Formal Written Agreement requiring, among other things, that Capital Corp and County Bank comply with the restrictions on golden parachute and indemnification payments under 12 U.S.C. § 1828(k).

In April 2008, Claimant was recruited to work for the Debtor and County Bank.  County Bank and the Debtor sent the Claimant an offer of employment letter dated April 17, 2008.  The offer of employment letter indicated that Claimant would be provided a "change of control benefit equal to one year base-salary."  Starting in June 2008, Claimant served as Vice

1  President and Chief Accounting Officer for County Bank and Capital Corp of the West.
2  ~~During Claimant's first week of employment, he received a "sign on bonus" in the amount of~~
3  ~~$15,000.~~  Moreover, County Bank presented Claimant with a *Severance Agreement*, dated
4  June 9, 2008 (the "Severance Agreement").  Claimant signed the Severance Agreement on June
5  9, 2008.  The Claim is based on the Severance Agreement.
6      The Severance Agreement contemplated post-employment payments in the amount of
7  one-year's salary upon the termination of the Claimant's employment.  The Severance
8  Agreement provides that County Bank promises to provide the following "Severance Benefit":

> [A] severance benefit equal to one year base salary, based on your base salary just prior to termination ("Severance Benefit").  The Severance Benefit shall be paid in equal installments over twelve months, starting on the next regular payday following termination.

12  ~~The Severance Agreement clearly states that~~ the two parties to the agreement are
13  Claimant and County Bank, not the Debtor.  The Severance Agreement has the name
14  "COUNTY BANK" at the top of the first page of the agreement.  The first sentence of the
15  agreement states, "The management and Board of County Bank . . ." The signature block of
16  the Severance Agreement states the name of County Bank, and not Capital Corp.
17      The Severance Agreement provides that the written agreement is the "Entire
18  Agreement." The Severance Agreement states:

> *Entire Agreement.* This Severance Agreement sets forth the entire understanding and agreement of the parties as to the subject matter of this Severance Agreement.

21  The Severance Agreement contains a choice of law provision, which provides:

> *Governing Law.* This Agreement will be governed by the laws of the state of California."

24  ~~The Debtor reported a net loss of more than $54 million in its Quarterly Report for the~~
25  third quarter of 2008, which was filed with the Securities & Exchange Commission on
26  November 17, 2008.  In that Quarterly Report, the Debtor stated, "The Company has
27  determined that significant additional sources of liquidity and capital will be required for us to
28  ~~continue~~ operations through 2008 and beyond."  The Debtor was, however, unable to find any

~~additional sources of liquidity and capital~~.

On February 6, 2009, the Federal Reserve and the California Department of Financial Institutions closed County Bank and the FDIC was appointed as receiver. Claimant's final day of employment with County Bank was February 6, 2009. Neither the FDIC nor the Federal Reserve approved the Severance Agreement.

On May 11, 2009, the Debtor commenced this case by filing a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. The United States Trustee appointed the Creditors' Committee on May 28, 2009. The Court authorized the employment of Creditors' Committee's counsel on June 30, 2009.

~~Numerous former employees of the Debtor, including Claimant, filed proofs of claims for post-employment compensation based on, among other things, severance agreements~~. The last day to file a proof of claim was established as September 17, 2009, and Claimant filed his Claim late on May 31, 2011. ~~Debtor's Disclosure Statement, signed by David Heaberlin the Plan Administrator, provides a frank assessment of the validity of the post-employment compensation claims~~:

> ~~In the Debtor's view, a substantial amount of the Salary Continuation and Severance obligations are not valid claims. The Debtor's position is based on the fact that the agreements governing such obligations state that the Debtor's obligations terminate upon the receivership of County Bank, that certain of the payments would be prohibited by the restrictions on golden parachute payments under 12 CFR Part 359, that certain of the agreements require a change in control to trigger the payments, and that certain agreements require FDIC and Federal Reserve Board consent which has not been received despite pre-petition requests.~~

The court entered an order approving *Debtor's Second Amended Plan of Liquidation* on January 20, 2010 (the "Plan"). Under section 9.2 of the Plan, the Creditors' Committee continues to exist with all power and duties provided under the Bankruptcy Code, and has full authority and responsibility for objecting to the claims of former employees of the Debtor for post-employment compensation.

~~The court sustained all of the Creditors' Committees unresolved objections to claims by former officers and other employees based on post-employment compensation agreements~~.

1  ~~The aggregate amount of the disallowed claims for post-employment compensation was~~
2  ~~approximately $7.5 million~~.

**~~Analysis and~~ Conclusions of Law.**

A properly filed Proof of Claim constitutes "prima facie evidence of the validity and amount of the claim" pursuant to Federal Rule of Bankruptcy Procedure 3001(f). Therefore, the initial burden of proof is on the objecting party to present facts which show that the Proof of Claim is invalid or inaccurate. *Lundell v. Anchor Const. Specialists, Inc.*, 223 F.3d 1035, 1039 (9th Cir. 2000) (citations omitted). If the objecting party presents sufficient evidence to negate the Proof of Claim, the burden shifts to the claimant to prove the validity of the claim by a preponderance of the evidence. *Ashford v. Consolidated Pioneer Mort. (In re Consol. Pioneer Mort.)*, 178 B.R. 222, 226 (9th Cir. BAP 1995). The ultimate burden of persuasion remains at all times upon the claimant. *Lundell*, 223 F.3d at 1039.

**I.  The Creditors' Committee has not demonstrated that Claimant received notice of the bankruptcy and therefore the Claim will not be disallowed on the basis that it was filed late.**

The Creditors' Committee contends that the Claim should be disallowed because it was filed beyond the claims bar date. The Creditors' Committee has not demonstrated, however, that the Claimant was given proper notice of this bankruptcy case. Therefore, the court will not sustain the Objection on this basis.

**II.  The Severance Agreement is between Claimant and County Bank, and not the Debtor.**

~~The Creditors' Committee argues that the parties to the Severance Agreement are County Bank and the Claimant, not the Debtor.~~ The Creditors' Committee ~~therefore~~ assets that the Severance Agreement is unenforceable against the Debtor because no contract was formed between Claimant and Debtor, and the Debtor is not obligated under the Severance Agreement. ~~In support of its argument, the Creditors' Committee points to the plain language of the Severance Agreement~~. The Severance Agreement has the name "COUNTY BANK" at the top of the first page of the agreement. In addition, the first sentence of the agreement states, "The management and Board of County Bank . ." The signature block of the Severance Agreement

1   states the name of County Bank, and not Capital Corp of the West.

2   ~~The Creditors' Committee further argues that the evidence Claimant relies on is~~

3   extrinsic to the Severance Agreement and is barred by the Parol Evidence Rule. The Parol

4   Evidence Rule makes extrinsic evidence inadmissible in the interpretation of a contract unless

5   the contract is ambiguous. Extrinsic evidence is excluded for the reason that it cannot serve to

6   prove what the agreement was because, as a matter of law, the writing constitutes the

7   agreement. *Hayter Trucking, Inc. v. Shell Western E&P, Inc.*, 18 Cal.App. 4th 1 (Cal.App. 5th

8   ~~Dist. 1993). Furthermore, the Creditors' Committee points out tha~~t the Severance Agreement

9   specifies that California law applies to it. Under California statutes, the interpretation of a

10  contract is generally governed by the plain language of the contract. Section 1638 of the

11  California Civil Code provides, "The language of a contract is to govern its interpretation, if the

12  language is clear and explicit, and does not involve an absurdity." Cal. Civ. Code, § 1638.

13         Claimant's Opposition contends that the Debtor is obligated under the Severance

14  Agreement because: (1) Claimant was an employee of the Debtor, and (2) the Severance

15  Agreement states his title as "CAO Capital Corp of the West." Claimant also provided with his

16  Claim a copy of an offer of employment letter from the Debtor and County Bank, which makes

17  reference to a severance benefit. Whether Claimant was an employee of the Debtor, as opposed

18  to County Bank, is not determinative on the issue of whether the Debtor is obligated under the

19  Severance Agreement. The offer of employment letter is extrinsic evidence. Because the

20  Severance Agreement is not ambiguous, the court cannot consider extrinsic evidence to

21  interpret it. Claimant has not established that the Debtor is obligated under the Severance

22  Agreement, and extrinsic evidence is not admissible to alter the interpretation of the Severance

23  Agreement.

24         The ~~plain~~ language of the Severance Agreement is clear, and the parties to the

25  Severance Agreement are ~~clearly~~ County Bank and Claimant. Thus, the Objection will be

26  sustained and the Claim disallowed.

27  / / /

28  / / /

1  ~~III.    The Severance Agreement is a prohibited "golden parachute".~~

2      A.  **Overview of the "golden parachute" laws of the Federal Deposit Insurance Act and applicable regulations.**

Congress added "golden parachute" laws to the Federal Deposit Insurance Act ("FDIA") in 1990 in response to payments made to executives of failed financial institutions during the Savings & Loan Crisis.  136 *Cong. Rec.* H783-05 (1990).  The purpose of the golden parachute laws includes safeguarding the assets of undercapitalized financial institutions.[1]  The FDIA's "golden parachute" laws are codified at 12 U.S.C. § 1828(k).  The statute provides a definition of "golden parachute" payments and agreements in the context of banks and bank holding companies, and authorizes the FDIC to craft and establish regulations implementing the "golden parachute" laws.  The FDIC adopted regulations regarding "golden parachutes" in February 1996.  *See* 61 FR 5926, 5930 (1996) The "golden parachute" regulations are codified at 12 C.F.R. § 359.

The "golden parachute" laws apply to banks and bank holding companies determined to be in a "troubled condition" under the applicable banking laws, and restrict payments from troubled banks or bank holding companies to any institution-affiliated party ("IAP") which is defined as "any director, officer, [or] employee." 12 C.F.R. § 359.1(h).

In general, the "golden parachute" laws prohibit insured depository institutions and their holding companies from making or having agreements to make "golden parachute" payments without regulatory consent.  The "golden parachute" regulations state:

> No insured depository institution or **depository institution holding company** shall make or **agree** to make any golden parachute payment, except as provided in this part.

12 C.F.R. § 359.2 (Emphasis added).

A "golden parachute" payment means any payment in the nature of compensation (*or agreement to make such a payment*) for the benefit of any current or former director, officer, or employee of an insured depository institution or its holding company that meets a three prong

---

[1] *See* Board of Governors of the Federal Reserve System, Supervision and Regulation Letter dated April 22, 2003 (SR 03-06).

1  definition. 12 C.F.R. § 359.1(f). First, the agreement is payable after the termination of the
2  employee's employment – i.e., the agreement is for post-employment payments. 12 C.F.R. §
3  359.1(f)(i). Second, payments would be received after the troubled condition, insolvency or
4  bankruptcy of the bank or bank holding company. 12 C.F.R. 359.1(f)(ii). Third, payments
5  would be made to an employee whose employment ended when the bank or bank holding
6  company was financially troubled. 12 C.F.R. 359.1(f)(iii).

With regard to the second prong, the express language of the golden parachute laws provide that a golden parachute is any payment which:

> (ii) Is received on or after, or is made in contemplation of, any of the following events:
>
> (A) The insolvency (or similar event) of the insured depository institution which is making the payment or **bankruptcy** or insolvency (or similar event) of the **depository institution holding company** which is making the payment; or
>
> (B) The appointment of any conservator or **receiver** for such insured depository institution; or
>
> (C) A determination by the insured depository institution's or depository institution holding company's appropriate federal banking agency, respectively, that the insured depository institution or **depository institution holding company** is in a **troubled condition,** as defined in the applicable regulations of the appropriate federal banking agency (§ 303.101(c) of this chapter)
>
> . . .

12 C.F.R. § 359.1(f)(ii)(Emphasis added).

Therefore, a post-employment payment, or agreement to make such a payment, that would be received after the bankruptcy of a bank holding company satisfies the second prong of the definition of golden parachute. In addition, a determination by the bank holding company's appropriate federal banking agency that the bank holding company is in a "troubled condition" also satisfies the second prong of the definition.

**B.    The Severance Agreement is prohibited by the "golden parachute" laws.**

The Severance Agreement fits squarely within the definition of a "golden parachute". The Severance Agreement contemplates payments in the aggregate amount of $145,000 after the termination of the Claimant's employment.

First, the express language of the Severance Agreement shows that it is solely for post-employment payments. 12 C.F.R. § 359.1(f)(i). Paragraph 2 of the Severance Agreement provides that Claimant would be provided:

> [A] severance benefit equal to one year base salary, based on your base salary just prior to termination ("Severance Benefit"). The Severance Benefit shall be paid in equal installments over twelve months, starting on the next regular payday following termination.

Therefore, the Severance Agreement satisfies the first component of the definition of a golden parachute under 12 C.F.R. § 359.1(f)(i).

Second, the facts of this case are clear that any payments made under the Severance Agreement would be made after the troubled condition, insolvency, and bankruptcy of the Debtor. 12 C.F.R. § 359.1(f)(ii). In May 2008, the Federal Reserve determined that the Debtor was in a "troubled condition." In May 2009, the Debtor filed a voluntary bankruptcy petition. Therefore, the Severance Agreement satisfies the second prong of the definition of a golden parachute under 12 C.F.R. § 359.1(f)(ii).

Third, Claimant's employment with the Debtor ended on February 6, 2009 when the Debtor was in a troubled condition. 12 C.F.R. § 359.1(f)(iii). In May 2008, the Federal Reserve determined that the Debtor was in a "troubled condition." The Federal Reserve did not reverse the "troubled condition" status of the Debtor at any time. In fact, based on the Debtor's SEC filings, the Debtor was suffering large losses during the second half of 2008. As such, the Claimant's employment terminated when the Debtor was in a troubled condition. Therefore, the Severance Agreement satisfies the third prong of the definition of a golden parachute under 12 C.F.R. § 359.1(f)(iii).

Although there is an exception for certain nondiscriminatory severance pay plans or arrangements pursuant to 12 C.F.R. § 359.1(f)(2)(v) that exception has express conditions to its applicability, including that it provide payments to all eligible employees. 12 C.F.R. § 359.1(f)(2)(v). A nondiscriminatory plan would be one that all employees would be entitled to have. Claimant's Claim, is based on an agreement that was unique to him and was not available to all employees, and therefore was not nondiscriminatory. In addition, the exception

set forth in section 359.1(f)(2)(v) of Title 12 of the Code of Federal Regulations does not apply to agreements which have been "adopted" at a time when the Debtor was in a "troubled condition." 12 C.F.R. § 359.1(f)(2)(v). Here, the Severance Agreement was adopted in June 2008, after the Debtor had been determined to be in a "troubled condition." Therefore, the exception embodied in 12 C.F.R. § 359.1(f)(2)(v) is not applicable.

Based on the foregoing, the Severance Agreement constitutes a prohibited "golden parachute" pursuant to 12 U.S.C. § 1828(k) and 12 U.S.C. § 359.

### C. The Claim is invalid based on the "golden parachute" laws.

Section 502(b)(1) of the Bankruptcy Code disallows any claim that is "unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured." The U.S. Supreme Court has stated, "This provision is most naturally understood to provide that, with limited exceptions, any defense to a claim that is available outside of the bankruptcy context is also available in bankruptcy." *Travelers Casualty & Surety Co. v. Pacific Gas & Electric Co.*, 549 U.S. 443, 450 (2007).

Under California law, a contract that is illegal or against public policy is void and unenforceable. *Asdourian v. Arag*, 38 Cal. 3d 276, 291 (1985) (stating, "Generally a contract made in violation of a regulatory statute is void.").

Because County Bank and Capital Corp were determined to be in a "troubled condition," the Severance Agreement is prohibited under the "golden parachute" laws, unless the Federal Reserve and the FDIC provided written consent. There is no evidence that the FDIC or Federal Reserve provided written consent. Once County Bank and Capital Corp were determined to be in a "troubled condition", it became impossible, by operation of law, and unlawful as against the golden parachute laws for the Debtor to make the payments required under the Severance Agreement absent the consent of the Federal Reserve. No such consent has been obtained.

Accordingly, Claimant's Claim is invalid based on the "golden parachute" laws.

**D.    Claimant's argument that the "golden parachute" laws do not apply to him is contrary to the law.**

In the Opposition, Claimant asserts that his Severance Agreement is not prohibited by the "golden parachute" laws because he was not an "executive level employee". Section 359.1(f) of Title 12 of the Code of Federal Regulations defines the scope of the "golden parachute" laws. It defines a "golden parachute payment" as follows:

> (1) The term golden parachute payment means **any payment (or any agreement to make any payment) in the nature of compensation by** any insured depository institution or an affiliated **depository institution holding company** for the benefit of **any current or former IAP [institution affiliated party]** pursuant to an obligation of such institution or holding company . . .

12 C.F.R. § 350.1(f)(1).

Pursuant to the above section, the "golden parachute" laws cover any "institution affiliated party". "Institution affiliated party" is defined in 12 C.F.R. §359.1(f)(h) to include "any employee." The section of regulations provides:

> (h) Institution-affiliated party (IAP) means:
>
> (1) **Any** director, officer, **employee**, or controlling stockholder (other than a depository institution holding company) of, or agent for, an insured depository institution or depository institution holding company

12 C.F.R. § 350.1(h).

Based on the express language of the "golden parachute" laws, Claimant is subject to the "golden parachute" laws as he was an employee of an insured depository institution or an insured depository institution holding company.

**E.    Claimant has not obtained proper consent from either the FDIC or the Federal Reserve for his Severance Agreement, as required by the golden parachute laws.**

Claimant acknowledges that he has not obtained consent for his Severance Agreement from the Federal Reserve or the FDIC. In his Opposition, Claimant indicates that he was induced by the Severance Agreement to accept employment with the Debtor. Claimant further suggests that the Debtor had the duty to request consent from the Federal Reserve and the FDIC, and that the Debtor's failure to obtain approval for the Severance Agreement should not

~~prejudice him. Claimant's conception of the "golden parachute" laws is mistaken.~~

Section 359.4(a)(2), known as the "white knight exception," provides that:

> (a) An insured depository institution or depository institution holding company may agree to make or may make a golden parachute payment if and to the extent that:
>
> . . .
>
> (2) Such an agreement is made in order to hire a person to become an IAP either at a time when the insured depository institution or depository institution holding company satisfies or in an effort to prevent it from imminently satisfying any of the criteria set forth in § 359.1(f)(1)(ii), **and the institution's <u>appropriate federal banking agency</u> and the Corporation <u>consent in writing</u> to the amount and terms of the golden parachute payment** . . . [Emphasis added].

12 C.F.R. § 359.4.

As reflected above, the "white knight exception" specifically states that written consent from the bank holding companies appropriate federal banking agency must be obtained. As a state-charted bank holding company, the Debtor's appropriate federal banking agency was the Federal Reserve. 12 C.F.R. § 359.6. Therefore, Claimant was required to obtain the written consent of the Federal Reserve for any golden parachute agreements or payments. 12 C.F.R. § 359.6.

The issue of obtaining consent under the "white knight exception" set forth in 12 C.F.R. § 359.4(a)(2) came before the Third Circuit Court of Appeals in the case of *McCarron v. F.D.I.C.*, 111 F.3d 1089 (3rd Cir. 1997), *cert. denied*, 522 U.S. 1046, 118 S.Ct. 689 (1998).

In *McCarron*, an executive of a failed bank sued the FDIC to recover severance and retirement benefits from the bank. *Id.* at 1092. The executive alleged that he was exempt from the "golden parachute" laws under the "white knight exception" pursuant to 12 C.F.R. § 359.4(a)(2). *Id.* at 1093. The executive in *McCarron* had not provided evidence that regulatory consent had been obtained for his severance benefits. The Third Circuit stated:

> while McCarron may very well be a "white knight" under the terms of the FDIC regulation, **he** has failed to meet the requirement that the appropriate federal banking agency and the FDIC "consent in writing to the amount and terms of the golden parachute payment." 12 C.F.R. § 359.4.

*Id.* at 1096 (emphasis added).

~~Therefore, because the executive in *McCarron* did not himself (i.e., "he") obtain proper~~ consent for his severance agreement, the Third Circuit held that there was no factual or legal basis to permit payment of the severance agreement. Claimant has not established that the Federal Reserve and FDIC consented to his Severance Agreement. Therefore, payment of the Severance Agreement is not permitted under the applicable federal banking laws. Thus, the Claim will be disallowed.

IV.     **The creation of the Severance Agreement did not constitute an avoidable transfer under 11 U.S.C. § 548(a)(1)(B) because the evidence does not show that Claimant is an "insider."**

The Creditors' Committee argues that the creation of the Severance Agreement was a fraudulent transfer under 11 U.S.C. § 548(a)(1)(B)(ii)(IV). Congress added Section 548(a)(1)(B)(ii)(IV) of the Bankruptcy Code in 2005. That section provides a basis to avoid an obligation to an insider created pursuant to an employment contract for less than reasonably equivalent value and made outside the ordinary course of business. Notably, the provision does not require proof that the Debtor was insolvent when it incurred the obligation. *In re TSIC, INC., f/k/a The Sharper Image*, 428 B.R. 103, 110 (Bankr. D. Del. 2010). Instead, an avoidable fraudulent transfer under this section requires five elements:

(a) an obligation incurred by the debtor within two years of the filing of the petition,

(b) for less than reasonably equivalent value,

(c) for the benefit of an insider,

(d) under an employment contract, and

(e) not in the ordinary course of business.

11 U.S.C. § 548(a)(1)(B)(ii)(IV); *see also In re TransTexas Gas Corporation*, 597 F.3d 298, 304-305 (5th Cir. 2010); *In re TSIC, INC., f/k/a The Sharper Image*, 428 B.R. at 109.

In *TransTexas*, the Fifth Circuit Court of Appeals affirmed the bankruptcy court and the district court's holdings that an obligation to the debtor's former CEO incurred under a severance agreement within two years of a chapter 11 filing was an avoidable fraudulent transfer under 11 U.S.C. § 548. The bankruptcy court had avoided a $3 million dollar severance package to the former CEO of TransTexas under 11 U.S.C. § 548(a)(1)(B)(ii)(IV).

### A. The creation of Claimant's Severance Agreement in June 2008 created an obligation within two years of the filing of the petition.

The creation of the Severance Agreement occurred in June 2008, which was approximately 11 months prior the Debtor's bankruptcy filing on May 11, 2009. Therefore, the obligation that was incurred by the creation of the Severance Agreement arose within two years of the Debtor's bankruptcy filing, and the two year window under 11 U.S.C. § 548(a)(1).

### B. The creation of Claimant's Severance Agreement in June 2008 was for less than reasonably equivalent value.

At the time the Severance Agreement was created, Claimant was receiving a salary as compensation for Claimant's services, and the creation of the Severance Agreement conferred an additional benefit on Claimant. *See TSIC, INC., f/k/a The Sharper Image*, 428 B.R. at 113-114.

To measure reasonably equivalent value, courts view the consideration given for a transfer from the standpoint of creditors. "The proper focus is on the net effect of the transfers on the debtor's estate, [and] the funds available to the unsecured creditors." *See TransTexas Gas Corporation*, 597 F.3d at 306 (quoting *In re Hinsley*, 201 F.3d 638, 644 (5th Cir. 2000)).

### C. The creation of the Claimant's Severance Agreement in June 2008 was not for the benefit of an insider.

Claimant states in he was not an "executive level employee" and had "limited if any, influence on the operations of the entity . . ." Under 11 U.S.C. § 548(a)(1)(B)(ii)(IV), an obligation can be avoided if it is to an "insider" created pursuant to an employment contract for less than reasonably equivalent value and made outside the ordinary course of business. The Opposition essentially disputes that Claimant was an "insider" of the Debtor.

The statutory definition of an "insider" of a debtor corporation under Section 101(31) includes an "officer" or "person in control." 11 U.S.C. § 101(31)(B)(ii) & U.S.C. § 101(31)(B)(iii). Claimant states in his Opposition that he was not an officer or a person in control. The Creditors' Committee does not refute this assertion. Therefore, the court finds that the Claimant is not an "insider" within the meaning of 11 U.S.C. §§ 101(31)(B)(ii),

101(31)(B)(iii), and 548(a)(1)(B)(ii)(IV).

### D. The Severance Agreement was an employment contract.

The Severance Agreement provided benefits to Claimant based on his employment. The contract is in the nature of an executive severance agreement. Comments addressing the purpose of the 2005 amendment to section 548 make it clear that Congress intended to eliminate excessive insider payments under employment contracts that prejudice general unsecured creditors in light of the Enron and WorldCom bankruptcy cases. 151 *Cong. Rec.* S1979-01 (2005). In addition, in *The Sharper Image* case, the bankruptcy court granted summary judgment under 11 U.S.C. § 548(a)(1)(B)(ii)(IV) avoiding severance benefits totaling more than $1 million paid to a former officer of the debtor under a Settlement Agreement entered into within 2 years of a bankruptcy filing. *TSIC, INC., f/k/a The Sharper Image,* 428 B.R. at 116-117. Thus, the Severance Agreement is the type of employment contract that Congress intended to restrict.

### E. The record does not establish that the Severance Agreement was made outside the ordinary course of the Debtor's business.

The term "ordinary course of business" protects "recurring, customary credit transactions that are incurred and paid in the ordinary course of business of the debtor and the debtor's transferee." *United States Trustee v. First Jersey Sec., Inc. (In re First Jersey Sec., Inc.),* 180 F.3d 504, 512 (3d Cir. 1999). Courts hold that when a debtor transfers funds for the sole benefit of an insider, the transfer is not considered in the ordinary course of business. *In re Nat'l Gas Distrib.,* 346 B.R. 394, 405 (Bankr. E.D.N.C. 2006). Because the court finds that the Claimant is not an "insider," the court does not find that the creation of the Severance Agreement was not made in the ordinary course of business.

Accordingly, because the Claimant is not an "insider" of the Debtor, the court will not sustain the objection on the basis that the Severance Agreement was an avoidable transfer under 11 U.S.C. § 548(a)(1)(B)(ii)(IV).

///

///

15    FINDINGS OF FACT AND CONCLUSIONS OF LAW ON
OBJECTION TO PROOF OF CLAIM

V. **The disallowance of the Claim is without prejudice to the Claimant's right to pursue claims for misrepresentation against non-debtors.**

Claimant's Opposition states that the Debtor's executive officers should have "notified Claimant before employment was to begin that the most significant benefit offered to Claimant during the recruiting process was currently invalid and not enforceable without regulatory approval." In addition, Claimant states that the "executive officers and members of the Board of Directors mislead Claimant on the condition of [the Debtor] and [County Bank]. . . in order to induce Claimant to begin employment."

Although the court will disallow the Claim, the Court's ruling on this Objection does not preclude the Claimant from pursuing claims against non-debtors in the appropriate court. The courts sustaining of the Objection and disallowance of the Claim are without prejudice to the Claimant's rights to pursue claims for misrepresentation against non-debtors in the appropriate court.

**Conclusion.**

Based on the foregoing, the court finds and concludes that the Claim is ~~invalid and~~ unenforceable because the parties to the Severance Agreement are the Claimant and County Bank, not the Debtor. Thus. the Debtor has no obligation under the Severance Agreement. ~~In addition, the Severance Agreement is a prohibited "golden parachute" payment under 12 U.S.C. § 1828(k) and 12 C.F.R. § 359~~. The court is not persuaded that the Creditors' Committees argument regarding the late filed claim has merit. ~~The court finds that the Creditors' Committees argument that the Severance Agreement is an avoidable transfer under 11 U.S.C. § 548(a)(1)(B)(ii)(IV) lacks merit~~. The Objection will be sustained, and the Claim will be disallowed, without prejudice to the Claimant's rights to pursue claims against non-debtors for misrepresentation.

Dated: Jan 02, 2012

W. Richard Lee
United States Bankruptcy Judge