Case 09-14298   Filed 07/17/12   Doc 1842

FILED

JUL 17 2012

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

POSTED ON WEBSITE

NOT FOR PUBLICATION

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
FRESNO DIVISION

| | |
|---|---|
| In re | Case No. 09-14298-B-11 |
| Capital Corp of the West, | DC No. None |
| Debtor. | |

**MEMORANDUM DECISION REGARDING APPLICATION
OF PLAN ADMINISTRATOR (DAVID A. HEABERLIN)
FOR ALLOWANCE AND PAYMENT OF POST-
CONFIRMATION COMPENSATION (APRIL 2012)**

This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

David A. Heaberlin appeared on behalf of himself.

Paul J. Pascuzzi, Esq., of Felderstein Fitzgerald Willoughby & Pascuzzi, LLP, appeared on behalf of the post-confirmation debtor, Capital Corp of the West.

Philip S. Warden, Esq., of Pillsbury Winthrop Shaw Pittman LLP, appeared on behalf of the objecting creditors, Thomas Hawker, David Kraechan, Edwin Jay Lee, Ed Rocha and John Incandela.

Christian D. Jinkerson, Esq., of Klein, DeNatale, Goldner, Cooper, Rosenlieb & Kimball, LLP, appeared on behalf of the Unsecured Creditors' Committee.

Before the court is an application by the chapter 11 plan administrator, David A. Heaberlin ("Heaberlin"), for allowance and payment of post-confirmation compensation for the month of April 2012 (the "April Application"). The April Application is opposed by creditors

Thomas Hawker, David Kraechan, Edwin Jay Lee, Ed Rocha and John Incandela (the "Creditors"). For the reasons set forth below, the April Application will be approved in full.

This memorandum decision contains findings of fact and conclusions of law required by Federal Rule of Civil Procedure 52(a), made applicable to this contested matter by Federal Rule of Bankruptcy Procedure 7052.[1] The bankruptcy court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157, 11 U.S.C. § 523 and General Orders 182 and 330 of the U.S. District Court for the Eastern District of California. This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A).

**Background and Findings of Fact**.

Heaberlin is the Plan Administrator for the post-confirmation Debtor. Under the confirmed plan, the appointed professionals may submit monthly applications for their fees and expenses. Unless there is an objection, the Debtor may pay the fees and expenses without court approval.[2] On May 7, 2012, Heaberlin submitted his April Application for the services he performed during the month of April 2012. Heaberlin requests $33,600 in fees representing 149.2 hours of time spent in service to the Debtor. 120.7 hours were billed at the rate of $250 per hour. The remaining time, 28.5 hours were billed at the reduced rate of $125 per hour. Heaberlin did not request reimbursement of expenses. The April Application is supported by time records to show how Heaberlin spent his

---

[1] Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1330, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9036, as enacted and promulgated *after* October 17, 2005, the effective date of The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. 109-8, Apr. 20, 2005, 119 Stat. 23.

[2] This procedure has been in place and operating without any litigation since the Debtor's chapter 11 plan was confirmed on January 20, 2010.

2

time for the services billed. Heaberlin is a certified public accountant; however, his services were performed as an employee of the Debtor, rather than as an independent contractor. Heaberlin is the Debtor's sole remaining employee and handles all of the accounting and reporting functions for the Debtor, in addition to the document control and litigation support as needed by the Debtor's counsel.

The Creditors filed a timely objection to the April Application.[3] Both the Debtor and the Unsecured Creditors' Committee responded with statements in support of Heaberlin and the April Application. The Creditors objected generally to all of the fees requested by Heaberlin and requested that the April Application be disallowed in full. This was based on the Creditors' contention that the administration of this case has taken too long and should be brought to a conclusion.[4] Even though the Creditors have not previously objected to any of Heaberlin's fee applications, they now protest vehemently the total amount of all of the fees that have been paid to all of the professionals since confirmation of the plan.

Turning specifically to Heaberlin's April Application, the Creditors object to fees incurred in numerous categories and ask that those fees be either disallowed or reduced to a "reasonable amount." The Creditors prepared an extensive spreadsheet showing which of Heaberlin's fees were in their view "excessive." After the hearing, the court gave Heaberlin an opportunity to file a response.

---

[3]The Creditors also file objections to the April 2012 fee applications filed by the Debtor's counsel and by counsel for the Unsecured Creditors' Committee.

[4]Ironically, the Creditors are all respondents in hotly contested claim objection matters involving over $45 million of disputed claims. At the parties' request, those claim objections have been set for non-binding mediation in August 2012. If a settlement is not reached through mediation, it is likely that the claim objection process will continue for a substantial time in the future.

3

**Analysis and Conclusions of Law.**

When bankruptcy courts are asked to review the fees incurred by a professional person employed to work in a case under § 327, the process begins with reference to the Bankruptcy Code which offers a statutory framework for analyzing the fees. The Code mandates that professional fees must be actual, necessary and reasonable.[5]

---

[5]Professional compensation for persons employed to work for the bankruptcy estate is governed by § 330(a) which provides in pertinent part:

(a)(1) After notice to the parties in interest and the United States Trustee and a hearing, . . . the court may award . . . a professional person employed under section 327 or 1103–

    (A) reasonable compensation for actual, necessary services rendered by the . . . professional person, or attorney . . . ; and

    (B) reimbursement for actual, necessary expenses.

(2) The court may, on its own motion or on the motion of . . . any other party in interest, award compensation that is less than the amount of compensation that is requested.

(3) In determining the amount of reasonable compensation to be awarded to . . . [a] professional person, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including–

    (A) the time spent on such services;

    (B) the rates charged for such services;

    (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

    (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

    (E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience

4

The concept of reasonableness when applied to professional fees invokes a combination of objective and subjective inquiries. Objectively, the court must be persuaded that the work performed in a particular case was consistent with the kind of service which a similarly situated debtor might require. The court must also determine that the value of the services is consistent with the cost of similar services for similar work. Subjectively, the court must inquire whether the professionals exercised prudent billing judgment in the decisions that were made to engage the services, the way the work was assigned, and the manner in which it was actually performed.

**Valuing Professional Services, the Lodestar Approach.** In the Ninth Circuit, the customary method for determining the reasonableness of a professional's fees is the "lodestar" calculation. *Morales v. City of San Rafael*, 96 F.3d 359, 363 (9th Cir. 1996), *amended*, 108 F.3d 981 (9th Cir. 1997). "The 'lodestar' is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." *Morales*, 96 F.3d at 363 (citation omitted). "This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). A compensation award based on the loadstar is a presumptively reasonable fee. *In re Manoa Fin. Co.*, 853 F.2d 687, 691 (9th Cir. 1988).

In rare or exceptional instances, if the court determines that the lodestar figure is unreasonably low or high, it may adjust the figure upward or downward based on factors enumerated in *Kerr v. Screen Guild Extras,*

---

in the bankruptcy field; and

(F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

*Inc.*, 526 F.2d 67 (9th Cir. 1975). *Morales*, 96 F.3d at 363–64. The original *Kerr* factors include:

    (1) the time and labor required,

    (2) the novelty and difficulty of the questions involved,

    (3) the skill requisite to perform the professional service properly,

    (4) the preclusion of other employment by the professional due to acceptance of the case,

    (5) the customary fee,

    (6) whether the fee is fixed or contingent,

    (7) time limitations imposed by the client or the circumstances,

    (8) the amount involved and the results obtained,

    (9) the experience, reputation, and ability of the professionals,

    (10) the "undesirability" of the case,

    (11) the nature and length of the professional relationship with the client, and

    (12) awards in similar cases.

*Kerr*, 526 F.2d at 70 (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974)).

However, some of the *Kerr* factors have been subsumed as a matter of law within the initial lodestar calculation and should be taken into account in either the reasonable hours component or reasonable hourly rate component. *Morales*, 96 F.3d at 363–64 & nn.8–9. These include (1) the novelty and complexity of the issues, *Jordan v. Multnomah County*, 815 F.2d 1258, 1262 n.6 (9th Cir. 1987) (citing *Blum v. Stenson*, 465 U.S. 886, 898–900 (1984)); (2) the special skill and experience of the professional, *id.*; (3) the quality of representation, *id.*; (4) the results obtained, *id.*; and (5) the contingent nature of the fee agreement, *City of Burlington v. Dague*, 505 U.S. 557, 565–67 (1992). These subsumed factors may not act as

6

independent bases for adjustments to the lodestar figure. *Miller v. Los Angeles County Bd. of Educ.*, 827 F.2d 617, 620 n.4 (9th Cir. 1987).

Given the two-step "lodestar" approach, the court has considerable discretion in determining the reasonableness of professional's fees. *Gates v. Duekmejian*, 987 F.2d 1392, 1398 (9th Cir. 1992). It is appropriate for the court to have this discretion "in view of the [court's] superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters." *Hensley*, 461 U.S. at 437.

**Application of the Lodestar to This Case.** The first step in the "lodestar" process, the "reasonable hours" analysis, requires the court to determine if the professionals exercised prudent billing judgment in the performance of their duties to the client. Prudent billing judgment is an essential part of the lodestar analysis. Unless the court is satisfied that the professionals were prudent and made a good faith effort to perform their work efficiently, then the court cannot apply the lodestar presumption to any of their fees. On the "billing judgment" issue, the Supreme Court has commented,

> The [court] . . . should exclude from this initial fee calculation hours that were not "reasonably expended." Cases may be overstaffed, and the skill and experience of lawyers vary widely. Counsel for the [party requesting attorney's fees] should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission. In the private sector, "billing judgment" is an important component in fee setting. It is no less important here. Hours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority.

*Hensley*, 461 U.S. at 434 (citations and internal quotation marks omitted, emphasis in original).

It is not sufficient for the fee applicant to simply represent that all of the time claimed was usefully spent, and the court should not uncritically

7

accept these representations. *Jordan*, 815 F.2d at 1263 n.8 (citation omitted). Instead, the fee applicant must show that the time spent was reasonably necessary and that the professional made a good faith effort to exclude excessive, redundant, or unnecessary hours. *Id.* (citation omitted).

In support of their objection, the Creditors discuss seven categories of services billed by Heaberlin which they contend were unnecessary or excessive. At the court's invitation, Heaberlin provided a comprehensive and detailed response to each of the Creditors' objections. Heaberlin's response also details the history and complexity of this case, the difficulties that have been encountered post-petition, particularly in ongoing litigation with the FDIC and claim objections with the objecting Creditors. Heaberlin also offers an enlightening discussion of his own internal work policies and billing procedures. The court adopts Heaberlin's supplemental Declaration filed on June 19, 2012 (docket no. 1816) in support of its ruling on each of the objections raised by the Creditors.

The court has carefully considered each of the objections and Heaberlin's response to each of the questions raised in the disputed categories. Based thereon, the court is persuaded that Heaberlin has exercised reasonable billing judgment in the services reflected in the April Application. Accordingly, the "lodestar" presumption of reasonableness applies. The court has also considered the specific time entries at issue, the amount of money in dispute, the rates charged by Heaberlin compared to the cost of outside services, if available, and the scope of the work performed and the results obtained. Based thereon, the court is persuaded that the hours billed by Heaberlin were actual, necessary and reasonable.

/ / /

/ / /

**Conclusion.**

Based on the foregoing, the court finds and concludes that the fees billed by Heaberlin in the April Application were actual, necessary and reasonable. Accordingly, the Creditors objection will be overruled and Heaberlin's April Application will be approved. Heaberlin shall submit a proposed order.

Dated: July __17__, 2012

W. Richard Lee
United States Bankruptcy Judge

Capital Corp of the West, Case No. 09-14298

Capital Corp of the West
2821 G Street
Merced, CA 95340

Paul J. Pascuzzi, Esq.
Attorney at Law
400 Capitol Mall, Suite 1450
Sacramento, CA 95814

David A. Heaberlin
c/o Paul J. Pascuzzi, Esq.
Attorney at Law
400 Capitol Mall, Suite 1450
Sacramento, CA 95814

Philip S. Warden, Esq.
Attorney at Law
P.O. Box 7880
San Francisco, CA 94120

Christian D. Jinkerson, Esq.
Attorney at Law
5260 N. Palm Avenue, Suite 201
Fresno, CA 93704

Office of the U.S. Trustee
U.S. Courthouse
2500 Tulare St., Ste. 1401
Fresno, CA 93721